W. T. CARLISLE, ET AL., *v.* R. M. CARLISLE, ET AL.

**Proof of Title to Land.**

> To make out title to land sold on execution it is necessary to exhibit both the judgment and execution.

### APPEAL FROM KENTON CIRCUIT COURT.

#### October 12, 1876.

OPINION BY JUDGE COFER:

It is necessary, in order to make out title to land sold under an execution, to exhibit the judgment and execution. *Dunn v. Meriwether,* 1 A. K. Marsh. 158; *Martin v. M'Cargo,* 5 Litt. 293; *Stevens v. Robertson,* 3 T. B. Mon. 97. This rule has never been departed from by this court, and we find no exception to it sufficiently broad to cover the facts of this case.

In *Bustard v. Gates,* 4 Dana 429, it was held that after the lapse of twenty years it was sufficient to produce the judgment and execution book, and that these, in connection with the recitals in the sheriff's deed and twenty years possession under it, were sufficient evidence of a sale under execution on the judgment.

But in this case no fi. fa. is exhibited, and the only record evidence that an execution ever issued or that the land was levied on is furnished by the recitals in the deed made by the officer who made the sale. The sale purports to have been made under a venditioni exponas, but that writ contains no description whatever of the land, nor does it recite that it had been levied on.

We have not been referred to any case, and have been unable to find one in which it has been held or intimated that title to land can be made out under a sale by a sheriff or other like officer by an exhibition of a judgment and a deed reciting an execution and levy and sale under it. The exhibition of an execution, or the production of equivalent record evidence, or of evidence of the existence of an execution, is essential to show authority in the officer to make a levy and sale. A venditioni confers no authority to levy upon property,

but merely commands the officer to sell property already levied upon; and unless it shows upon its face that a levy had been made, and describes the property to be sold, it cannot supply the place of a fi. fa. in making out title.

We are therefore constrained to hold that R. M. Carlisle has failed to make out title to the land in contest under the sale made by the sergeant of this court.

Nor do we think that he has established title by adverse possession. The decided preponderance of the evidence is to the effect that there was no adverse holding during the life of John Carlisle. Up to the time of his death he kept stock on the farm and household furniture in the house, and controlled at least a part of the farm, and claimed it as his own; and the declarations of R. M. Carlisle made after his father's death show that up to that time he did not claim to be the owner of the land. This conclusion is fortified by the fact that he sold the land, in 1848, to J. D. Carlisle for not exceeding one-fourth of its value, and by the further fact that he failed to take that character of care and control of it that he would most likely have done if he had then claimed to be the absolute owner.

The most favorable construction to R. M. Carlisle that the evidence admits, is that from the Spring of 1842 up to the death of John Carlisle in June, 1844, he held possession of a part of the land without claiming to be the owner, while his father held the residue and claimed the whole.

This suit was commenced in March, 1864, within less than twenty years after the death of John Carlisle, and within a little more than nineteen years from the date of the sergeant's deed which was the first notification given by R. M. Carlisle that he claimed the land as his own. The suit having been commenced before May 31, 1866, when the act of May 31, 1865 (Myers's Supplement 295), extending the provisions of Chap. 63, Revised Statutes, to causes of action which accrued before those statutes were adopted, it is conceded that less than twenty years adverse possession did not constitute a bar to the relief sought in this case.

Those views render it unnecessary that we should consider the question whether the judgment in favor of the commonwealth against John Carlisle was void or not, or whether, on the evidence, R. M. Carlisle would be held a trustee in the event the sale should be held to be valid.

As this conclusion will render a settlement of the estate of John Carlisle, and an account of advancements, necessary so far as the

appellants, W. T. Carlisle, Nancy Bagley, Susan Collins and Martha Garrard are concerned, it is necessary that we should dispose of the question, whether W. T. Carlisle ought to be charged with the value of the negro girl referred to in the record.

She became the property of John Carlisle in virtue of his marital rights, but having been sold as his property, and purchased by Stewart, and conveyed by him to W. T. Carlisle, she became the property of the latter, and is not chargeable to him as an advancement; but if it should turn out, as is intimated in some of the evidence, that Stewart paid for her with money belonging to Carlisle, or that Carlisle repaid Stewart the amount paid for her, that sum should be charged as advancement. The evidence shows that R. M. Carlisle paid to the commonwealth on the judgment against his father the sum of $795, and for this and its interest he is entitled to a lien on the land, unless the rent has been sufficient to reimburse him.

The judgment is *reversed* as to W. T. Carlisle, Nancy Bagley, J. J. Bagley and Susan Collins, and is affirmed as to Martha Garrard, and the cause is remanded with directions to refer it to a commissioner to take an account of the estate of John Carlisle, including advancements made to each of his heirs, and to allot to these appellants, except Mrs. Garrard, so much in value of the land in contest as will, with any advancements they may have received, be equal to their respective shares of the entire estate.

*J. W. Stevenson, James M. Collins, for appellants.*

*James Pryor, James O'Hara, Jr., J. G. Carlisle, for appellees.*